UNITED STATES of America,
Plaintiff-Appellee,

v.

Sam C. MARTINO, Joseph C. Russello
and Rolando Gonzalez Rodriguez,
Defendants-Appellants.

No. 78–3611.

United States Court of Appeals,
Fifth Circuit.*

Aug. 2, 1982.

D. Frank Winkles, Tampa, Fla., for Martino.

Raymond E. LaPorte, Tampa, Fla., for Russello.

Peter N. Macaluso, Tampa, Fla., for Rodriguez.

Eleanor J. Hill, Sp. Atty., Dept. of Justice, Tampa, Fla., Sara Criscitelli, Dept. of Justice, Washington, D. C., for the U. S.

William W. Taylor, III, Washington, D. C., for amicus curiae.

Before GODBOLD, Chief Judge, BROWN, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK, WILLIAMS and GARWOOD, Circuit Judges.**

JAMES C. HILL, Circuit Judge:

We granted rehearing en banc in this case to decide whether the term "interest" as used in 18 U.S.C. § 1963(a)(1), the crimi-

---

* Former Fifth Circuit case, section 9(1) of Public Law 96–452, October 14, 1980.

** Judge Reynaldo G. Garza was a member of the en banc court under 28 U.S.C.A. 46(c) and participated in the oral argument of the case en

banc. Subsequently, the Omnibus Judgeship Bill, Public Law 95–486 (95th Congress) was approved October 20, 1978. In view of this, Judge Garza does not participate in this decision.

nal forfeiture provision of the Racketeer Influenced and Corrupt Organizations statute (RICO), 18 U.S.C. §§ 1961–1968,[1] includes income or profits derived from a pattern of racketeering activity. Specifically at issue in this case is the forfeitability of insurance proceeds obtained through the conduct of an arson ring. The district court resolved this question of statutory construction in the government's favor. On appeal a panel of this court reversed the monetary forfeiture orders.[2] We now affirm the decision reached by the trial court.

I

The facts surrounding the indictment, prosecution, and conviction of the various defendants are set out in detail in the panel opinion, 648 F.2d at 378–80, 409–11 app. Briefly, the evidence showed that a group of individuals associated for the purpose of committing arson with the intent to defraud insurance companies. This association in fact enterprise,[3] composed of an insurance adjuster, homeowners, promoters, investors, and arsonists, operated to destroy at least eighteen residential and commercial properties in Tampa and Miami, Florida between July 1973 and April 1976. The panel summarized the ring's operations as follows:

> At first the arsonists only burned buildings already owned by those associated with the ring. Following a burning, the building owner filed an inflated proof of loss statement and collected the insurance proceeds from which his co-conspirators were paid. Later, ring members bought buildings suitable for burning, secured insurance in excess of value and, after a burning, made claims for the loss and divided the proceeds.

*Id.* at 380. These activities formed the basis for an indictment charging twenty-three defendants with mail fraud,[4] conspiring to violate RICO,[5] and substantive RICO violations.[6] Following a jury trial sixteen defendants were found guilty and sentenced to varying terms of imprisonment.[7] Pursuant to Federal Rule of Criminal Procedure 31(e),[8] the forfeiture question was then submitted to the jury for its special verdict on the extent of the interest or property subject to forfeiture. The jury ordered four defendants to forfeit monies received as insurance payments upon the successful burning of their properties: Paul Guarino—$4,000.00; Sam C. Martino—$2,500.00;[9] Rolando G. Rodriguez—$4,266.83; and Joseph C. Russello—$340,043.69. Concluding that § 1963(a)(1) was intended to reach only interests in an enterprise and not the profits or income from racketeering activity, the panel reversed these monetary forfeitures. 648 F.2d at 409.[10]

1. RICO constitutes Title IX of the Organized Crime Control Act of 1970, Pub.L.No.91–452, 84 Stat. 941 (1970).

2. *United States v. Martino*, 648 F.2d 367, 407–09 (5th Cir. 1981), *vacated in part on other grounds sub nom. United States v. Holt*, 650 F.2d 651 (5th Cir. 1981) (conviction of defendant Holt mooted by his death). The panel's discussion of the forfeiture issue was not printed in the federal reporter due to our grant of rehearing en banc. That section appears in full in the advance sheets, slip op. at 8274–76 (5th Cir. June 19, 1981).

3. 18 U.S.C. § 1961(4) (1976).

4. 18 U.S.C. § 1341 (1976).

5. 18 U.S.C. § 1962(d) (1976).

6. 18 U.S.C. § 1962(c) (1976).

7. 648 F.2d at 379 n.1.

8. That rule provides: "If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any."

9. Defendant Martino was also ordered to forfeit his ownership interests in two companies, Ybor Loan Company and M & S Investment Corporation. Both of these. companies provided funds for the arson and fraud schemes. The panel affirmed the forfeiture of these interests, 648 F.2d at 409. The propriety of this aspect of the forfeiture order has not been questioned on this rehearing.

10. This reversal did not affect the forfeiture order against defendant Guarino, as he did not file a notice of appeal from that order. 648 F.2d at 407 n.19.

## II

### A

■ Resolution of this issue of statutory construction must begin with an analysis of the language of the statute itself. *Bread Political Action Committee v. Federal Election Commission,* —— U.S. ——, ——, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982) (quoting *Dawson Chemical Co. v. Rohm & Haas Co.,* 448 U.S. 176, 187, 100 S.Ct. 2601, 2608, 65 L.Ed.2d 696 (1980)). In the absence of "a clearly expressed legislative intention to the contrary," the plain language of the statute controls its construction. —— U.S. ——, 102 S.Ct. at 1238 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Under 18 U.S.C. § 1963(a), a defendant who

> violates any provision of section 1962 . . . shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, and (2) any interests in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

On its face, § 1963(a)(1) does not limit forfeitable interests to those in an enterprise. Rather, the statute speaks broadly of "*any* interest" which is the product of violating RICO's prohibitory provision, section 1962. Significantly, § 1963(a)(2) expressly limits forfeitable interests to those in an enterprise. Guiding our efforts at statutory construction in the past has been the presumption that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, . . . Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972).[11] Hence the limitation in § 1963(a)(2), and the absence of limitation in § 1963(a)(1), confirm what

the straightforward language of the latter already tells us: that § 1963(a)(1) reaches *any* interest derived from a violation of § 1962.

■ No definition of the term "interest" appears in RICO. We must assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). The common or dictionary definition of the term includes "right, title, or legal share in something; participation in advantage, profit, and responsibility." Webster's Third New International Dictionary 1178 (1971). It has also been defined as "[t]he most general term that can be employed to denote a right, claim, title, or legal share in something." Black's Law Dictionary 729 (5th ed. 1979). The concept is therefore broad enough to include profits or income. Indeed, this understanding comports with the House Report's definition of "interest" as inclusive of "all property and interests, as broadly described, which are related to the violations." H.R.Rep.No.1549, 91st Cong., 2d Sess. 57, *reprinted in* [1970] U.S.Code Cong. & Ad.News 4007.

Not only is the concept of profits or proceeds within the plain meaning of "interest," but the proceeds in question in this case were "acquired . . . in violation of section 1962," as § 1963(a)(1) requires. The insurance proceeds were the product of the defendants' violation of § 1962(c). That section makes it unlawful for "any person . . . associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." In this case, members of the arson ring conducted the affairs of that enterprise through the racketeering offenses of arson and mail fraud. Thus the unambiguous language of § 1963(a)(1) supports the view that profits derived from a pattern of racketeering activities are subject to forfeiture.

11. As we shall note *infra,* that presumption is fully borne out in this case by the revisions made to § 1963(a) before it assumed the form in which it was enacted.

Defendants and amicus [12] maintain that their position—that forfeitable interests under § 1963(a)(1) are limited to interests in an enterprise—also is supported by the language of the statute. Their analysis of the statute cannot withstand scrutiny. The only express limitation on forfeitable interests imposed by the language of the statute itself is that the interest must be "acquired or maintained in violation of section 1962." Defendants and amicus, however, read a further limitation into this language. Specifically they argue that "one acquires or maintains an interest in violation of Section 1962 *only* when he acquires or maintains an interest *in contravention of Sections 1962(a) or (b)*." Brief for Amicus Curiae at 7 (emphasis added). Briefly, § 1962(a) proscribes the use or investment of illegally derived income to acquire, establish, or operate an enterprise, while § 1962(b) prohibits the use of racketeering methods to acquire or maintain an interest in an enterprise.[13] Accordingly, the defendants and amicus argue, the link between the prohibitory provisions in §§ 1962(a) and (b), which refer to acquiring or maintaining violations, and the penal provision in § 1963(a)(1), which refers to interests "acquired or maintained" in violation of RICO, is clear. This reasoning, however, is flawed in several respects. First, it completely ignores § 1962(c). The language of § 1963(a)(1) ties forfeiture to violation of *any* of the prohibitory provisions in § 1962, not just §§ 1962(a) and (b).[14]

Second, the argument of defendants and amicus misconstrues the function of the reference in § 1963(a)(1) to § 1962. To be sure, the reference serves a kind of limiting function, but that function is not to define the type of forfeitable interests, as defendants and amicus assume. Rather, the reference merely identifies the illegal activities which trigger the forfeiture penalty, supplying the nexus between the RICO violation and the forfeitable property which the government must establish at trial.[15]

Third, reading an enterprise limitation into § 1963(a)(1) renders that section surplusage. Section 1963(a)(2) on its face requires forfeiture of "any interest in ... any enterprise which [the defendant] has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962." The establishment, operation, and control language clearly refers to violations of §§ 1962(a) and (b). Section 1963(a)(1) would merely be duplicative of this provision if, as defendants contend, it reaches only interests in an enter-

---

12. The National Association of Criminal Defense Lawyers, Inc. was permitted to participate as amicus curiae on rehearing.

13. In pertinent part these sections provide:
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce....
(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
18 U.S.C. §§ 1962(a), (b) (1976).

14. The district court in *United States v. Thevis*, 474 F.Supp. 134 (N.D.Ga.1979), fell into this same error in concluding that § 1963(a)(1) does

not reach proceeds derived from a violation of § 1962(c).

15. Again, this second error also infected the district court's reasoning in *Thevis*. That court opined:
Since it is the addition of the "enterprise" concept which distinguishes a RICO prosecution under 18 U.S.C. § 1962 from an ordinary prosecution directed at each of the individual predicated [sic] acts which constitute the pattern of racketeering activity, this Court is convinced that the "interest" subject to forfeiture under 18 U.S.C. § 1963(a) is limited to the interest in the enterprise and does not extend to fruits or profits generated from the enterprise.
*Thevis*, 474 F.Supp. at 142. That the enterprise concept is the overriding concept in RICO, distinguishing a RICO *prosecution* from an ordinary prosecution for the predicate acts of racketeering, does not necessarily mean that the enterprise concept is also a limitation on the type of property interests subject to forfeiture under § 1963(a)(1).

prise acquired or maintained in violation of §§ 1962(a) and (b).

The cure for these defects in reasoning lies in an examination of the effect of § 1963(a)(1) on a § 1962(c) violation. Section 1962(c) makes conducting an enterprise through a pattern of racketeering unlawful. The forfeiture resulting therefrom, under § 1963(a)(1), is the interest (or interests) acquired through or as a result of that unlawful conduct. Forfeiture of defendant's interest *in* the enterprise is governed by the impact of § 1963(a)(1) and (2) upon § 1962(a) and (b). If § 1962(c) results in any forfeiture at all—and § 1963(a) provides for forfeiture if one violates *any* § 1962 section—it must provide for forfeiture of something more than § 1962(a) or (b) or be mere surplusage. This interpretation restores § 1963(a)(1) to a role in the penalty scheme different from that played by § 1963(a)(2) and accords with the unambiguous language of the former section.

### B

Turning now from the language of the statute itself to expressions of legislative intent, we find confirmation for our view that § 1963(a)(1) reaches profits derived from racketeering activity.[16] In its Statement of Findings and Purpose prefatory to the Organized Crime Control Act of 1970, Congress spoke of the problem it sought to resolve in the following words:

(1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2)

organized crime *derives a major portion of its power through money obtained from such illegal endeavors* as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens . . . .

Organized Crime Control Act of 1970, Pub. L.No.91–452, 84 Stat. 922–23 (1970) (emphasis added). Having identified the problem, Congress also determined the cause for the criminal justice system's failure to make inroads on organized crime and its economic power base and proposed the cure it envisioned the new Act to embody.

[S]anctions and remedies available to the Government are unnecessarily limited in scope and impact.

It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing *new penal prohibitions*, and by providing *enhanced sanctions and new remedies* to deal with the unlawful activities of those engaged in organized crime.

---

16. The government directs our attention to RICO's liberal construction clause, arguing that it provides a definitive guide to the proper interpretation of § 1963(a)(1). In that clause Congress has mandated that "[t]he provisions of [RICO] shall be liberally construed to effectuate its remedial purposes." Organized Crime Control Act of 1970, Pub.L.No.91–452, § 904(a), 84 Stat. 947 (1970). In response the defendants and amicus contend that following this congressional directive would violate the rule of lenity, which calls for strict construction of penal provisions. We need not resolve the suggested conflict because we find no ambiguity in the statute which would occasion the invocation of either of these interpretive aids. The rule of lenity "only serves as an aid for resolving an ambiguity." *Callanan v. United States*, 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961); *see McElroy v. United States*, —— U.S. ——, ——, 102 S.Ct. 1332, 1341, 71 L.Ed.2d 522 (1982). As we discussed above, the language of § 1963(a)(1) is plain, and as we shall note *infra*, the legislative history is equally clear in revealing the broad scope which Congress intended § 1963(a) to have.

*Id.* at 923 (emphasis added). The Senate Committee Report on the bill reiterated this philosophy.

> What is needed here, the committee believes, are new approaches that will deal not only with individuals, but also with the economic base through which those individuals constitute such a serious threat to the economic well being of the Nation. In short, an attack must be made on *their source of economic power itself*, and the attack must take place on all available fronts.

S.Rep.No.617, 91st Cong., 1st Sess. 79 (1969) (emphasis added). Simply put, Congress' express objective in RICO is to take the profit out of organized crime.[17]

The criminal forfeiture provisions of § 1963(a) are central to this remedial objective. Section 1963(a) launches a two-pronged attack on the sources of economic power which feed the coffers and activities of organized crime. It demands both divestiture of power over the enterprise itself[18] and seizure of the income derived from racketeering activities.

From the debates on the Organized Crime Control Act, it is clear that the target of Congress' attack included racketeering operations in which the chief type of property interest obtained by organized crime would be something other than an ownership or proprietary interest.[19] For example, the legislative history refers to instances in which organized crime members infiltrate legitimate businesses, "bleed" these companies through fraud or theft, and thus force them into bankruptcy.[20] Organized crime

---

**17.** The legislative history is replete with references to this broad "hit them where they hurt" philosophy. Senator McClellan, chief sponsor of the Act, voiced the urgency of the need for new penal remedies to divest organized crime of the "ill-gotten gains [amassed by] criminals where they enter or operate an organization through a pattern of racketeering activity." 116 Cong.Rec. 592 (1970) (remarks of Sen. McClellan). Senator McClellan further commented: "Title IX attacks the problem by providing a means of wholesale removal of organized crime from our organizations, prevention of their return, and, where possible, *forfeiture of their ill-gotten gains.*" 116 Cong.Rec. 591 (1970) (remarks of Sen. McClellan) (emphasis added). Representative Poff, a manager of the bill in the House, viewed the criminal forfeiture provision as more than a penalty. "After conviction, the ill-gotten gains must be forfeited to the Government. This sanction is not only poetic justice but a strong deterrent as well." 115 Cong.Rec. 9951 (1969). Senator Byrd, a member of the Senate Judiciary Committee, also spoke of the deterrence effected by the broad forfeiture sanctions: "By removing its leaders from positions of ownership, by preventing them and their associates from regaining control, *and by visiting heavy economic sanctions on their predatory business practices* this legislation should prove to be a mighty deterrent to any further expansion of organized crime's economic power." 116 Cong.Rec. 607 (1970) (remarks of Sen. Byrd) (emphasis added).

This court has also recognized that the purpose of the forfeiture provision is to "deprive those convicted of racketeering activity of their economic base so that they could not easily continue illegal activities." *United States v. L'Hoste,* 609 F.2d 796, 814 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980).

**18.** We note that interests in an enterprise may take varying forms since they encompass both ownership interests (e.g., stock ownership or real property interests) and interests affording a source of influence over or control of the enterprise. *See, e.g., United States v. Rubin,* 559 F.2d 975 (5th Cir. 1977), *vacated and remanded on other grounds,* 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978) (forfeiture of union office).

**19.** To be sure, Congress principally viewed RICO as a response to organized crime's infiltration into legitimate businesses. *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981). Accordingly, it contemplated the forfeiture primarily of ownership or controlling interests in such businesses. This does not mean, however, that we should blind ourselves to other forms of racketeering which Congress also declared to be the object of its concern and should embrace the circumscribed approach advanced by defendants and amicus.

**20.** Senator Hruska documented one instance in which an organized crime figure became president of a company, bought large quantities of supplies on credit, ran up debts of approximately $1.3 million, made quick cut-rate sales, and pocketed about $750,000 of company funds for personal use. 115 Cong.Rec. 23569 (1969) (remarks of Sen. Hruska). Senator McClellan noted that "[a]pproximately 200 syndicate-inspired bankruptcy schemes are perpetrated annually." 116 Cong.Rec. 18940 (1970) (remarks of Sen. McClellan).

was also linked to credit card and bad check frauds, 116 Cong.Rec. 970 (1970) (remarks of Sen. Bible), and to theft from welfare and pension funds, 115 Cong.Rec. 5874 (1969) (remarks of Sen. McClellan). The Senate Report cited examples of arson schemes, particularly in the context of liquidating defaulted loan shark debts by burning the debtor's property and collecting the insurance proceeds. S.Rep.No.617, 91st Cong., 1st Sess. 77 (1969). *See also* 115 Cong.Rec. 5873 (1969) (remarks of Sen. McClellan). Narcotics trafficking, loan sharking, insurance fraud, extortion, gambling, and prostitution—all crimes in which the proceeds primarily consist of money— were all objects of congressional concern.[21]

In addition, when as here the RICO enterprise is an association in fact, rather than a legal entity, and the alleged RICO violation is conducting the affairs of this enterprise through racketeering methods, there often may be no forfeitable property other than the ill-gotten proceeds. Such may be the case not only with arson-for-profit rings but also with narcotics trafficking or pornography operations. It would certainly be contrary to Congress' stated intention to attack organized crime's source of economic power "on all available fronts," S.Rep.No.617, 91st Cong., 1st Sess. 79 (1969), to insulate from forfeiture the sole product of many racketeering activities. Excluding proceeds from the reach of § 1963(a)(1) would provide an incentive, not a deterrent, to bankruptcy schemes and to other forms of racketeering which yield primarily cash revenues.

Still further support for a broad interpretation of § 1963(a)(1) is found in the legislative history.[22] An early draft of RICO, S. 1861, which was introduced on April 18, 1969, contained only one basic forfeiture

provision and did expressly limit forfeitable property to interests in an enterprise. It read in full:

> Whoever violates any provision of section 1962 of this chapter shall be fined not more than $10,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States all interest *in the enterprise* engaged in, or the activities of which affect, interstate or foreign commerce.

S. 1861, 91st Cong., 1st Sess. (1969). In mid-October, however, the Senate Judiciary Committee began a revision of RICO. Out of the revision developed a section 1963(a) containing two subparts. Section 1963(a)(2) retained the concept of limiting forfeiture to a defendant's interest in an enterprise. On the other hand, section 1963(a)(1) dropped the enterprise limitation altogether. We find it persuasive that Congress considered limiting all forfeitures under RICO to enterprise interests but, after extensive legislative work, ultimately opted to delete this across-the-board restriction.

Finally, in examining the legislative history we must address one of the chief reasons cited by the panel for its conclusion that § 1963(a)(1) does not reach the insurance proceeds at issue here. In August 1969 Congress received a letter from then Deputy Attorney General Richard P. Kleindienst commenting upon RICO's forfeiture provision. It expressed the views of the Justice Department as follows:

> It is felt that this revival of the concept of forfeiture as a criminal penalty, *limited as it is in Section 1963(a) to one's interest in the enterprise* which is the subject of the specific offense involved here, and not extending to any other property of the convicted offender, is a

---

**21.** *See, e.g.*, 115 Cong.Rec. 5873, 5874, 5884–85 (1969) (remarks of Sen. McClellan); 116 Cong. Rec. 585, 586 (1970) (remarks of Sen. McClellan); 601 (remarks of Sen. Hruska); 606 (remarks of Sen. Byrd); 953 (remarks of Sen. Thurmond); 962 (remarks of Sen. Murphy); 970 (remarks of Sen. Bible); 35199 (remarks of Rep. St. Germain); 35300 (remarks of Rep. Mayne). *See also* 18 U.S.C. § 1961(1) (Supp. IV 1980) (list of predicate acts of racketeering

activity which may form basis of RICO prosecution).

**22.** We are mindful that the language of the statute, and not the legislative history, is the law of the land. Indeed, "the language of the statute [is] the most reliable evidence of its intent . . . ." *United States v. Turkette*, 452 U.S. 576, 593, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981). With that caveat we proceed.

matter of Congressional wisdom rather than of constitutional power . . . .

*Measures Relating to Organized Crime, Hearings Before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary,* 91st Cong., 1st Sess. 407 (1969) (emphasis added). The panel viewed the letter as indicative of congressional intent strictly to limit forfeitures. This interpretation of the letter's significance, however, ignores its context.

First, Congress was aware that it was entering new territory with the enactment of RICO; there was concern particularly over the constitutionality of the sanction of in personam criminal forfeiture.[23] The Kleindienst letter addresses that concern, explaining that constitutional problems are avoided by the requirement of a nexus between a § 1962 violation and the interest to be forfeited. Furthermore, the letter was submitted as a commentary on S. 1861, the original draft of RICO, which, as we have noted above, contained a unitary forfeiture provision with an express enterprise limitation. While the Senate Report on S. 30, the bill ultimately enacted, does cite Kleindienst's letter,[24] nothing in the report suggests that the letter provides a technical commentary on the scope of each section of the expanded bill.

Our more limited interpretation of the meaning of the Kleindienst letter finds support in the Justice Department's comments in subsequent House hearings on S. 30 as it passed the Senate.

[Title IX] contains a provision for the forfeiture of any interest which has been attained in violation of the criminal provisions of the statute. The Department of Justice commented at length *upon the constitutionality of this sanction* in a report on S. 1861, from which Title IX has been derived, in [the Kleindienst letter] . . . .

*Hearings on S. 30 Before Subcomm. No. 5 of the House Comm. on the Judiciary,* 91st Cong., 2d Sess. 171 (1970) (emphasis added). Notably, the Justice Department's comments on S. 30 do not describe § 1963(a) forfeitures as limited to interests in an enterprise.

### III

Our holding today squarely conflicts with that of the Ninth Circuit in *United States v. Marubeni America Corp.,* 611 F.2d 763 (9th Cir. 1980).[25] *But see United States v. Godoy,* 678 F.2d 84 (9th Cir. 1982) (holding that commercial real estate purchased with profits derived from racketeering activity is subject to forfeiture). For several reasons, some of which we have already discussed,[26]

**23.** Reacting against the harsh English tradition of criminal forfeiture, the framers of the Constitution provided:

> The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted.

U.S.Const.art. III, § 3, cl. 2. The first Congress also enacted a provision barring corruption of the blood or forfeiture of estate upon conviction. Act of Apr. 30, 1790, 1 Stat. 117, ch. 9 § 24 (codified in 18 U.S.C. § 3563).

**24.** S.Rep.No.617, 91st Cong., 1st Sess. 79 (1969).

**25.** In *Marubeni* two corporations and several individuals were charged with mail fraud, wire fraud, interstate travel to commit bribery, and conspiracy to commit these offenses. These acts were committed as part of a scheme to rig the competitive bidding for contracts to supply telephone cable. The government appealed from the district court's dismissal of that por-

tion of the indictment seeking forfeiture of the over $8.8 million in profit on the telephone cable contracts. These profits were alleged to be the product of the defendants' conduct of the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c), *United States v. Marubeni America Corp.,* 611 F.2d 763, 764 (9th Cir. 1980).

**26.** Among the reasons compelling the Ninth Circuit's decision were the linguistic relationship between § 1963(a)(1) and §§ 1962(a) and (b) and the Justice Department views as expressed in the Kleindienst letter. 611 F.2d at 766, 768. For a thorough critical analysis of the entire opinion, *see* Trojanowski, *RICO Forfeiture: Tracing and Procedure; Appendix: United States v. Marubeni America Corp. and the Scope of RICO Forfeiture,* in 1 Techniques in the Investigation and Prosecution of Organized Crime 378a (G. Blakey ed. 1980), and Note, *RICO: Are the Courts Construing the Legislative History Rather Than the Statute Itself?,* 55 Notre Dame Law. 777, 783–89 (1980).

we find the *Marubeni* rationale unconvincing.

In *Marubeni* the Ninth Circuit focused much of its attention on the "1% investment exception" in § 1962(a). *Id.* at 766–67. To the general prohibition in § 1962(a) on investment of income derived from a pattern of racketeering activity Congress added an exception.

A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

18 U.S.C. § 1962(a) (1976). From this the Ninth Circuit reasoned: "Congress would not have established rules for the investment of racketeering income, enforced by the penalty of criminal forfeiture, if it intended the government to seize that income regardless of how it was used." 611 F.2d at 767. Our interpretation of § 1963(a)(1) does not, as the Ninth Circuit's comment would imply, render § 1962(a)'s 1% investment exception meaningless. We believe that the court in *Marubeni* obscured the separate functions of the prohibitory and penalty provisions of RICO.

The 1% investment exception evidences Congress' choice *not to criminalize* the investment of illegally derived income when the total investment is *de minimis* and thus would not grant the racketeer control over the business entity. So understood the exception functions as a practical limit, exempting from prosecution what otherwise

would constitute illegal activity under § 1962(a). If the investment of illegally derived income constitutes less than 1% of the issuer's outstanding shares, that investment alone violates no criminal proscription and hence triggers no forfeiture at all. The exception thus limits the definition of what is illegal. It does not immunize from forfeiture the fruits of activities that are made illegal under other provisions of § 1962; it "does not create a class of investment of illicit income exempt from forfeiture." [27]

The court in *Marubeni* also points to the use of the term "profits" in the forfeiture provision of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848(a)(2)(A),[28] as evidence that Congress would have expressed itself more clearly in § 1963(a)(1) if it had intended forfeiture of racketeering income. 611 F.2d at 766 n.7. As we observed above, the concept of "interest" is broad and encompasses the notion of profits. Moreover, Congress' use of differing language for the two forfeiture provisions, with the more comprehensive term employed in RICO, is a logical byproduct of the different evils addressed by the two acts. Under attack in the Comprehensive Drug Abuse Prevention and Control Act of 1970 is the narcotics trafficking industry in which organized crime is engaged. The continued dealing in illegal drugs which is proscribed by that Act typically involves cash transactions. By contrast, the interests acquired by violating RICO may take a variety of forms since many types of activity, primarily economic crimes, come within the scope of its prohibitions. *See* 18 U.S.C. § 1961(1) (Supp. IV. 1980) (definition of "racketeering activity"). Hence Congress' use of "profits" in 21 U.S.C. § 848(a)(2)(A) cannot support the negative inference the court in *Marubeni* perceived it to have as to the meaning of "interest" in 18 U.S.C. § 1963(a)(1).

### IV

At oral argument a question was raised as to whether the government has an obli-

---

**27.** *Trojanowski, supra* note 26, at 378aa.

**28.** The statute provides: "Any person who is convicted . . . of engaging in a continuing crim-

inal enterprise shall forfeit to the United States —(A) the profits obtained by him in such enterprise . . . ." 21 U.S.C. § 848(a)(2)(A) (1976).

gation to trace and identify the current form of monetary proceeds before it may collect on a forfeiture order. Clearly this issue goes to collectibility and related procedures and not to the type of interests forfeitable under § 1963(a)(1). The parties did not brief this issue, and we do not resolve it today. Under 18 U.S.C. § 1963(c)[29] and Federal. Rule of Criminal Procedure 32(b)(2),[30] the district court must determine the terms and conditions under which the defendants must comply with the monetary forfeitures declared in the special jury verdict and affirmed by our holding today. Because on remand the district judge must undertake this task, we make a few observations on the nature of the questions with which he must grapple. Focusing on the *in personam* character of RICO criminal forfeiture, the government contends in a supplemental letter to this court that it has no obligation whatever at this point[31] to trace the insurance proceeds into their current form. According to the government, the monetary forfeiture order is like any other money judgment, permitting it to satisfy the judgment from any of the defendants' current assets.[32] Commentators, on the other hand, have suggested that normal

principles of restitution, particularly the theories of constructive trust and equitable lien, should be applied to trace forfeitable property that has changed form.[33] We intimate no views on the question, leaving it for the district court to determine in the first instance if the issue be raised there.[34]

## V

RICO is a powerful and flexible weapon designed to break the economic power of organized crime and hence to undermine its ability to disrupt and drain the national economy. We acknowledge that its breadth supplies a potential for great abuse. The harshness of the statute's impact, however, cannot dictate the proper construction of its provisions. Congress was aware of the far-reaching measures it was enacting to deal with the unprecedented problem of organized crime. The plain language of the statute, its remedial and deterrent purposes, and the legislative history all compel the conclusion that § 1963(a)(1) encompasses forfeiture of the income or proceeds of racketeering activity.

The judgment of the district court on the forfeiture issue is

**29.** In relevant part the statute directs: "Upon conviction of a person under this section, the court shall authorize the Attorney General to seize all property or other interest declared forfeitable under this section upon such terms and conditions as the court shall deem proper." 18 U.S.C. § 1963(c) (1976).

**30.** "When a verdict contains a finding of property subject to a criminal forfeiture, the judgment of criminal forfeiture shall authorize the Attorney General to seize the interest or property subject to forfeiture, fixing such terms and conditions as the court shall deem proper." Fed.R.Crim.P. 32(b)(2).

**31.** Questions regarding the specificity required in the indictment in order to comply with Federal Rule of Criminal Procedure 7(c)(2) and the extent to which tracing principles apply in satisfying that requirement are not before us.

**32.** The government points out that its practice in prosecutions under the Comprehensive Drug Abuse Prevention and Control Act of 1970 is to trace the flow of profits and the property later acquired by the profits and to identify the final

form of the profits in the indictment. That practice, the government advises, is compelled by the practical inability otherwise to identify the forfeitable sum involved in large drug transactions. The government submits, however, that such tracing is neither statutorily nor constitutionally required. It further points out that, because the amount of the insurance proceeds at issue here is readily identifiable, the inability to otherwise arrive at the forfeitable sum does not compel resort to tracing in this case.

**33.** *Trojanowski, supra* note 26, at 364; Weiner, *Crime Must Not Pay: RICO Criminal Forfeiture in Perspective,* 1 N.Ill.U.L.Rev. 225, 256 (1981).

**34.** The prospect of a priority conflict among competing claimants to the proceeds was also raised at oral argument. We note only that RICO itself directs the Executive to make "due provision for the rights of innocent persons" in disposing of forfeited property. 18 U.S.C. § 1963(c) (1976).

AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.[35]

POLITZ, Circuit Judge, joined by ALVIN B. RUBIN, VANCE, TATE, THOMAS A. CLARK, JERRE S. WILLIAMS and GARWOOD, Circuit Judges, dissenting:

Respectfully, I dissent, regretting that I cannot join my colleagues in one of the last cases decided en banc by the Former Fifth Circuit. I am unable to concur in the holding that a payment made under a fire insurance policy necessarily constitutes a forfeitable "interest" under 18 U.S.C. § 1963(a)(1), being of the opinion that the language, structure and purpose of the Racketeer Influenced and Corrupt Organization Act direct a different conclusion.

The issue posited by the court today is whether the term "interest," as used in § 1963(a)(1), "includes income or profits derived from a pattern of racketeering activity." That is the larger issue, but perhaps the more precise issue at bar is whether, under the RICO forfeiture provisions, a money judgment may be rendered against a defendant, in a sum equal to the amount paid under a fire insurance policy, for a loss occasioned by arson in a setting violative of RICO.

Just as nature abhors a vacuum, historically our society has abhorred forfeitures. As Judge Hill notes in footnote 23, the framers of the Constitution demonstrated their repudiation of the harsh English tradition of criminal forfeiture, and our very first Congress forbade the forfeiture of an estate because of a criminal conviction. Further, a forfeiture with an *in personam* application, as we have before us, is to be most charily assessed. It is from this perspective that I address the inquiry before the en banc court.

RICO is Title IX of the Organized Crime Control Act of 1970, Congress's solar plexus blow to organized crime. The Act and its legislative history reflect Congress's determination to counter the takeover of legitimate businesses, as well as to combat organized, illegal activities. In enacting RICO, Congress ordained a criminal statute of vast scope and stern consequences, aimed at punishing and deterring those who would wreak havoc in the social and economic fabric of our society.

The penalties to which Congress subjected a violator of RICO, as set forth in § 1963, include a fine of up to $25,000, imprisonment of up to 20 years, and the forfeiture to the United States of:

(1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

18 U.S.C. § 1963(a)(1) & (2).

The court today concludes that the word "interest," as here used, includes income or profits derived from a pattern of racketeering activity. I do not share that conclusion, adhering to the view expressed in the panel opinion that the term "interest," as used in § 1963(a)(1), applies only to an interest in the enterprises envisioned in §§ 1962(a), (b) and (c) and not to income derived from illegal activity. Whether this distinction is wise, prudent or appropriate is, as I perceive it, a matter best left to the legislative branch, for it represents a significant policy decision.

The interests to be forfeited under § 1963(a)(1) are those acquired or main-

---

**35.** We reinstate the part of the panel's opinion and judgment which ordered forfeiture of Martino's interest in Ybor Loan Company and M & S Investment Company. See note 9 *supra.* That part of the opinion, which does not appear in the bound reporter (see note 2 *supra*), reads as follows:

We affirm the order of forfeiture of Martino's interest in his two companies because it falls squarely within the language of § 1963(a)(2) which provides for the forfeiture of any interest affording a source of influence over the enter-

prise. Both of Martino's companies were active in the enterprise. They provided funds for the arson and fraud ventures. The M & S Investment Corporation purchased property with the intent to burn it, but sold the property to someone else who then burned it. Martino was an active participant; he played an important role within the enterprise, a role made even more effective because of the companies he managed. The Act requires forfeiture of his interest in these companies.

tained in violation of § 1962. Section 1962(a) prohibits acquiring, establishing or operating "an enterprise" with income derived "from a pattern of racketeering activity or through collection of an unlawful debt." The exception contained in this section sharply focuses the pith of the entire section—money oozing from a pattern of racketeering activity, or resulting from collection of an unlawful debt, may not be used to infiltrate legitimate businesses unless the investment is made under certain limiting circumstances and constitutes less than 1% of the business's outstanding securities. This section prohibits the investment of tainted funds in a legitimate enterprise. Congress determined to place the protective mantle of the federal criminal law around legitimate businesses, guarding them from the corruption inherent in soiled funds. Section 1962(b) proscribes the acquiring or maintaining of an interest in or control of an enterprise through racketeering activity or by collection of an unlawful debt. Subsection (c) proscribes the conduct of the affairs of an enterprise through racketeering activity or unlawful debt collection. Recently, the Supreme Court made clear that subsections (b) and (c) apply to both legitimate and illegitimate associations. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

I am persuaded that the forfeiture sanction intended by § 1963(a)(1) relates to interests in a business acquired with tainted money (§ 1962(a)), and interests in any enterprise acquired or maintained by racketeering activity or unlawful debt collection, (§ 1962(b)). I am further persuaded that § 1963(a)(2) relates primarily to an interest in an enterprise which is involved in conduct violative of § 1962(c). To me, the text of these sections clearly reflects that Congress made interests in enterprises the grist of forfeiture. The sections seek to prevent the use of ill-gotten gains to corrupt businesses, to prevent the acquiring and maintaining of an interest in an enterprise through illegal activities, and to prevent the involvement of enterprises in illegal activities.

There are other reasons to believe that Congress did not intend "income" to be synonymous with "interest" for the purposes of forfeiture under § 1963. Although the definitional section, § 1961, does not include the specific meaning to be ascribed to "interest" or "income," the term "any

interest" and the word "interest" appear in several places throughout the statute. Section 1961(3) refers to a "legal or beneficial interest in property." Section 1962(a) refers to "any interest in . . . any enterprise." Section 1962(b) repeats the words "any interest in . . . any enterprise." Further, § 1964(a), the civil remedies section, prescribes that the court may order a person "to divest himself of any interest, direct or indirect, in any enterprise." In each instance the meaning is clear—an "interest" is an interest *in an enterprise.*

The panel found persuasive the analysis of our colleagues of the Ninth Circuit in *United States v. Marubeni America Corp.,* 611 F.2d 763 (9th Cir. 1980), who concluded that the forfeiture in RICO extends only to interests in an enterprise and does not include income or proceeds from a pattern of racketeering activity. I continue to be of that view and also find persuasive the discussion in *United States v. Thevis,* 474 F.Supp. 134 (N.D.Ga.1979) and *United States v. Meyers,* 432 F.Supp. 456 (S.D.Pa. 1977).

The majority concludes that "reading an enterprise limitation into § 1963(a)(1) renders that section surplusage." I disagree. One example underscores the error in this suggestion. Hypothesize that an individual uses income from racketeering activity to purchase 2% of the stock of a corporation listed on the stock exchange. The investment is totally passive; no element of control or influence envisioned by § 1963(a)(2) is involved. This interest would not be forfeitable under § 1963(a)(2), but it would be forfeitable under § 1963(a)(1) since the acquisition violates § 1962(a). The recognition of an enterprise limitation in § 1963(a)(1) does not, therefore, render that section surplusage.

The court today is not impressed with a portion of the legislative history cited by the panel, specifically the August 1969 letter from Deputy Attorney General Richard P. Kleindienst, in part because the letter specifically addressed another pending RICO proposal, S. 1861. Although acknowledging that the Kleindienst letter is cited in the Senate Report on S. 30, the enacted bill, the opinion maintains that the letter provides little meaningful guidance on the scope of the legislation as finally adopted. I disagree.

Although the Kleindienst letter refers to S. 1861, the Senate Report on S. 30 cites the letter as an accurate interpretation of the forfeiture clause. S.Rep.No.91–617, 91st Cong., 1st Sess., 78–80 (1969). That report, in explaining the forfeiture provision, notes:

> Section 1963 provides criminal penalties for the violation of section 1962, above. Subsection (a) provides the remedy of criminal forfeiture .... The language is designed to accomplish a forfeiture of any "interest" of any type *in the enterprise* acquired by the defendant or in which the defendant has participated in violation of section 1962.

(Emphasis added.) *Id.* at 160. Accord, *id.* at 34.

We find similar language in the House Report which speaks to forfeiture of interest "in an enterprise." H.R.Rep.No.91–1549, 91st Cong., 1st Sess. 35 and 57 (1970), reprinted in 1970 U.S.Code Cong. & Admin. News, 4007, 4010.

The essence of the forfeiture grounds a further reason for my disagreement with the en banc court's conclusion that § 1963 allows for forfeiture of monies received as insurance proceeds. Although general forfeitures are historically disfavored, Congress has frequently used the onus of specific forfeitures in combating illegal activities. *See, e.g.*, 15 U.S.C. § 11 (forfeiture of property acquired in violation of anti-trust laws); 15 U.S.C. § 1177 (forfeiture of property used in connection with illegal gambling); 16 U.S.C. §§ 65, 117(d), 128, 171, 256c, 4081 (forfeiture of guns and other equipment used unlawfully in national parks); 18 U.S.C. § 924 (forfeiture of firearms used illegally); 18 U.S.C. § 1082 (forfeiture of property used in connection with illegal gambling); 18 U.S.C. § 3612 (forfeiture of bribe monies illegally received by public officials); 18 U.S.C. § 3615 (forfeiture of property used in connection with liquor violations); 18 U.S.C. § 3617(d) (forfeiture of vehicles and aircraft seized for a violation of liquor laws); 18 U.S.C. §§ 3618 & 3619 (forfeiture of conveyances used to introduce intoxicants into Indian territo-

ries); 19 U.S.C. § 1306 (forfeiture of unwholesome imported meat); 19 U.S.C. §§ 1453 & 1492 (forfeiture of property seized in violation of customs laws); 21 U.S.C. § 334 (forfeiture of adulterated food); 31 U.S.C. § 490 (forfeiture of funds illegally withheld by public official); 49 U.S.C. §§ 781 & 782 (forfeiture of vessels, vehicles and aircraft used to transport contraband). In each of these instances, the forfeiture statutes provided for *in rem* actions against things put to illegal use. Although RICO prescribed an *in personam* forfeiture, it does not provide an unlimited sanction but is, I believe, restricted to the forfeiture of a specific interest in an enterprise which was acquired, or over which the defendant exercised control, contrary to § 1962. If Congress had intended otherwise, I am convinced it would have said so clearly and unequivocally.

No strangers to forfeitures generally, Congress is also no stranger to forfeitures of fruits and profits. If Congress meant to impose a forfeiture of income and proceeds in RICO, I suggest Congress could and would have done so in unmistakeable language. Congress knows how to decisively direct the forfeiture of profits. The same Congress which adopted RICO, in a matter of days adopted the Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. § 848(a)(2) states: "Any person who is convicted under paragraph (1) of engaging in a continuing criminal enterprise shall forfeit to the United States—(A) *the profits* obtained by him in such enterprise ...." (emphasis added). That is the kind of specification one would expect Congress to use when creating our first *in personam* forfeiture statute.

The court today would distinguish this variance in Congressional approach by observing that narcotics trafficking typically involves cash transactions while RICO violations result in interests which take a variety of forms. I disagree with so light a rejection of what I see as a meaningful, instructive variant.

Based on the foregoing, I am of the view that Congress did not intend to include in

the § 1963(a)(1) forfeiture provision, fire insurance proceeds or other fruits and profits obtained from RICO proscribed activities, other than those which are manifested as interests in one of the enterprises described in § 1962. I am cognizant that this conclusion occasions problems with respect to associations in which one cannot own a legal interest, as in the case *sub judice.* This limitation was recognized by the Justice Department in its comments on the legislation, when it observed that "there is often nothing to forfeit . . . in the case of individuals associated in fact." *Forfeiture under 18 U.S.C. § 1963—RICO's Most Powerful Weapon,* 17 *Am.Crim.L.Rev.* 379, 391 (1980) (*quoting* U.S. Department of Justice, Explanation of the Racketeer Influenced and Corrupt Organization Statute 2 (4th ed.)). Under my analysis, the kind of enterprise necessarily would be critical in the determination of forfeitable interests. That this poses an enforcement burden or hurdle is, again, a legislative consideration.

Finally, accepting the proposition that insurance proceeds are forfeitable, I question whether the forfeiture sanction is applicable to Russello and Rodriguez. These two defendants owned and insured buildings before the advent of the RICO arson ring. They later participated and feloniously burned their properties. The insurance proceeds may be taken as a different manifestation of a pre-RICO violation asset. If so, are the insurance payments truly income, fruits, revenue or profits of racketeering activities?

Regardless, these proceeds, based on arson and the payments of which were induced by fraud, are very likely to be defeasible. One would expect that under the insurance contract, and controlling state law, the insurer would be entitled to recapture the payments. In that event, what happens to the forfeiture decrees which are non-asset oriented money judgments, collectible from the defendants and their estates? Assuming recapture by the insurer, or diversion of all or a portion to an innocent third party such as a mortgage holder,

will the United States still have an enforceable money judgment against the defendant and his estate? Presumably so, and if that presumption is correct, what about the concept of divestiture of ill-gotten gains and the separation of the convicted defendant from the fruits of his illegal labors? Will this matter not in fact resolve into the forfeiture becoming an additional fine? Did Congress really intend to establish a latent fine with a potential for exceeding the maximum statutorily stated fine tenfold, twenty-fold or one hundred-fold?

I suggest that this type of difficulty is inherent in today's decision and is a direct concomitant of our holding that the forfeitable interest under § 1963(a)(1) extends beyond a present, discernible interest in an existing enterprise.

I respectfully dissent.