**Morvarid Paydar KASHANCHI,**
**Plaintiff-Appellant,**

v.

**TEXAS COMMERCE MEDICAL BANK,**
**N.A., Defendant-Appellee.**

No. 82–2242.

United States Court of Appeals,
Fifth Circuit.

May 2, 1983.

---

Joseph W. Ryan, Houston, Tex., for plaintiff-appellant.

Mark E. Taylor, Robin L. Harrison, Houston, Tex., for defendant-appellee.

Before GOLDBERG, GEE and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

The plaintiff, Morvarid Paydar Kashanchi, appeals from a final judgment of the district court dismissing her complaint for lack of subject matter jurisdiction. The issue on appeal is whether the term "electronic fund transfer" as used in the Electronic Fund Transfer Act ("EFTA" or "the Act"), 15 U.S.C. § 1693 (Supp. V 1981), includes a transfer of funds from a consumer's account, initiated by a telephone conversation between someone other than the owner of the account and an employee of a financial institution, when that transfer is not made pursuant to a prearranged plan or agreement under which periodic transfers are contemplated. For the reasons set forth below, we affirm.

On or about February 9, 1981, the plaintiff and her sister, Firoyeh Paydar, were the sole owners of a savings account at Texas Commerce Medical Bank in Houston, Texas. On or about that date, $4900 was transferred from their account. The transfer was allegedly initiated by a telephone conversation between an employee of the bank and someone other than the plaintiff or her sister. Upon receipt of a March 31, 1981, bank statement showing the $4900 withdrawal, Firoyeh Paydar sent a letter to the bank, dated April 15, 1981, notifying the bank that the withdrawal was unauthorized.

After the bank refused to recredit the account with the amount of the allegedly unauthorized withdrawal, the plaintiff filed this action on December 4, 1981, alleging violations by the bank of the EFTA. The district court granted the defendant's motion to dismiss on the ground that the plaintiff's cause of action was excluded from the coverage of the Act under 15 U.S.C. § 1693a(6)(E). The plaintiff timely appealed.

This is apparently the first case in which we have been called upon to interpret any

of the substantive provisions of the EFTA. We begin our inquiry with the language of the statute itself, recognizing that "absent a clearly expressed legislative intent to the contrary, the plain meaning of the language is ordinarily controlling." *Johnson v. Department of Treasury, Internal Revenue Service,* 700 F.2d 971 (5th Cir.1983); *see also United States v. Martino,* 681 F.2d 952, 954 (5th Cir.1982) (en banc).

■ The parties agree that the telephonic transfer that allegedly occurred in this case falls within the broad definition of "electronic fund transfers" in the Act:

> [T]he term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693a(6). Some of what Congress has given, however, it has also taken away. Excluded from the definition of an electronic fund transfer is

> any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated . . . .

1. Relying on the Federal Reserve Board's use of the conjunction "and" in its regulations implementing the EFTA, rather than the relative pronoun "which" used in the Act, the plaintiff maintains that the test for whether a particular transfer falls within the exclusion is two-pronged. The federal regulations exclude:

> Any transfer of funds that (1) is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution *and* (2) is not under a telephone bill-payment or other prearranged plan or agreement in which periodic or recurring transfers are contemplated.

15 U.S.C. § 1693a(6)(E). The plaintiff concedes that the unauthorized transfer of her funds was not made "pursuant to any prearranged plan," and that it was made by an employee of the bank. The question in this case is whether the telephone conversation was between the employee and a "consumer." [1]

The Act defines a consumer as "a natural person." 15 U.S.C. § 1693a(5). If we were to apply this definition to the language in the exclusion, we would have to conclude that the withdrawal of the plaintiff's funds was excluded from the coverage of the Act since a natural person, even if the person was neither the plaintiff nor her sister, made the withdrawal. The plaintiff argues, however, that we should read the term "consumer" more narrowly in this portion of the Act; she would have us interpret the provision to exclude only transfers made by the account holder.

The plaintiff maintains that the legislative history of the Act supports her narrow reading of the exclusion. She points out that the House version of the bill used the word "holder," meaning "the individual who is recognized as the owner of the account by the financial institution where the account is held," H.R. 13007, § 903(i), 95th Cong., 2d Sess., 124 Cong.Rec. 25737 (1978), where the Senate version, eventually adopted by Congress as the EFTA, uses the word "consumer." The plaintiff would have us infer that the Senate intended the word "consumer" to be synonymous with "holder." There is no indication in the legislative history, however, that this is what the Senate intended.[2] The only criticism

12 C.F.R. § 205.3(e) (1982) (emphasis added). We do not think that the difference in grammatical construction changes the nature of the exclusion.

2. One Senate version of the bill used the words "person" and "customer" instead of "consumer." The term "person" was defined as

> an individual who is a citizen of the United States or an alien lawfully admitted for permanent residence, or a partnership, corporation, association, trust, or any other legal entity organized under the laws of a State of the United States.

The term "customer" was defined as

leveled at the definition of consumer concerned the exclusion of corporations, particularly nonprofit corporations, from that definition. *See The Electronic Funds Transfer Consumer Protection Act, 1977: Hearings on S. 2065 Before the Subcomm. on Consumer Affairs of the Senate Comm. on Banking, Housing and Urban Affairs,* 95th Cong., 1st Sess. 37 (1977) (Statement of Linda Hudak, Legislative Director, Consumer Federation of America).

Secondly, Congress demonstrated in other sections of the EFTA that when it wanted to limit a particular provision of the Act to an account holder, rather than to all natural persons, it was perfectly capable of adding language to do so. For example, the Act defines an "unauthorized electronic fund transfer" as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer . . . ." 15 U.S.C. § 1693a(11). It is a well-established principle of statutory construction that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972).[3] In addition, reading "consumer" as the equivalent of "holder" would create redundancies in other portions of the Act. *See, e.g.,* 15 U.S.C. § 1693a(8).[4] "[W]ords

in statutes should not be discarded as 'meaningless' and 'surplusage' when Congress specifically and expressly included them, particularly where the words are excluded in other sections of the same act." *Wong Kim Bo,* 472 F.2d at 722; *see also Meltzer v. Board of Public Instruction,* 548 F.2d 559, 578 n. 38 (5th Cir.1977), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). In short, the language of the statute would seem to exclude the transfer in this case from the coverage of the Act.

Further, the legislative history of the EFTA is consistent with the plain meaning of the language in the statute and with the presumption arising from Congress's disparate inclusion and exclusion of words of limitation. The plaintiff emphasizes that Congress designed the Act to provide a comprehensive scheme of federal regulation for all electronic transfers of funds. *See* H.R.Rep. No. 1315, 95th Cong., 2d Sess. 2 (1978); *see also* E. Broadman, *Electronic Fund Transfer Act: Is the Consumer Protected?,* 13 U.S.F.L.Rev. 245 (1979). Congress undoubtedly intended the Act's coverage to be broad; the Act itself provides that its list of electronic fund transfers is not all-inclusive. 15 U.S.C. § 1693a(6). Aware that computer technology was still in a rapid, evolutionary stage of development, Congress was careful to permit coverage of electronic services not yet in exist-

---

any natural person who is a debit instrument patron of a debit instrument issuer who utilizes electronic fund transfer services primarily for personal, family or household purposes.

*Consumer Protection Aspects of EFT Systems, 1978: Hearings on S. 2546 and S. 2470 Before the Subcomm. on Consumer Affairs of the Senate Comm. on Banking, Housing, and Urban Affairs,* 95th Cong., 2d Sess. 131 (1978). The Senate did not explain, however, why it chose the word "consumer" and the broader definition of that word over the word "customer."

**3.** The plaintiff reads the definition of an "unauthorized electronic fund transfer" as an indication that not every natural person is a consumer within the context of the EFTA. She emphasizes that the federal regulations state that the definitions apply "unless the context indicates otherwise." 12 C.F.R. § 205.2 (1982). While the plaintiff's interpretation of the unauthor-

ized transfer definition is not without merit, her own emphasis on the importance of the context in which the language is used undercuts her argument. In a context where Congress has expressly narrowed the class of consumers to whom a specific provision in the statute applies, the more narrow definition is controlling. Congress did not, however, narrow the class of consumers to be covered by the exclusion, as it did in the unauthorized transfer section.

**4.** Section 1693a(8) provides:

the term "financial institution" means a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer.

15 U.S.C. § 1693a(8).

ence: "The definition of 'electronic fund transfer' is intended to give the Federal Reserve Board flexibility in determining whether new or developing electronic services should be covered by the act and, if so, to what extent." S.Rep. No. 915, 95th Cong., 2d Sess. 9 (1978), U.S.Code Cong. & Admin.News 1978, pp. 9273, 9411; *see also* National Commission on Electronic Fund Transfers, *EFT in the United States,* 4 (Final Rep.1977).

Congressional concern about electronic systems not specifically mentioned in the Act was focused, however, on future and as yet undeveloped systems, not on systems that Congress had simply failed to discuss. For example, the report on the House version of the Act explained the need for flexibility in dealing with *future* electronic systems:

> Many aspects of electronic fund transfer systems are undergoing evolutionary changes and, thus, projections about future events necessarily involve a degree of speculation. Consequently, the appropriate approach to those new financial service concepts is, in general, to permit further development in a free market environment and, to the extent possible, in a manner consistent with the nature and purpose of existing law and regulations governing financial services.

H.R.Rep. No. 1315, *supra,* at 33. The absence of discussion about informal personal phone transfers would seem to indicate an intent not to cover these transfers, or at least an absence of congressional concern about them, in light of the extensive discussion throughout the hearings and reports of the other existing types of electronic transfers. It is highly unlikely that this silence was a result of congressional ignorance of the problem since these informal phone withdrawals presumably had been occurring since shortly after the time of Alexander Graham Bell.

The exclusion of these informal transactions was not in the House version of the EFTA, and presumably it was not in the original version of the Senate bill either, since the minority report criticized the bill's coverage of incidental telephone instructions:

> In an attempt to reach the automatic telephone payments (transfers through a touch-tone telephone and computer network routing instructions to the financial institution) the Committee has also covered incidental telephone instructions by (a) depositor to a teller to make a transfer from a savings account to cover an overdraft or pay a bill.

S.Rep. No. 915, *supra,* at 24, U.S.Code Cong. & Admin.News 1978, p. 9425. Apparently, this criticism led to the inclusion in the final version of the EFTA of the exemption which is the subject of this suit. Focusing on the Federal Reserve Board's statement that phone transfers made as an "accommodation to the consumer" are not covered by the Act, 46 Fed.Reg. 46880 (1978), and the Senate minority report's discussion of telephone instructions made by a "depositor," the plaintiff would have us conclude that only transactions made as a favor to the actual account holder were excluded from the Act.

These transfers were more probably excluded, however, not because they are made as a favor to the account holder, but because of the personal element in these transfers. On the one hand, as the plaintiff points out, all phone transfers are particularly vulnerable to fraud because there is no written memorandum of the transactions; there is no signature to be authenticated. This lack of a written record was one of the factors that motivated Congress to pass the EFTA. *See* H.R.Rep. No. 1315, *supra,* at 2, 4. The other factor, however, was the dependency of electronic fund transfer systems on computers and the resulting absence of any human contact with the transferor. The House report explains: "Consequently, these impersonal transactions are much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods." *Id.* at 2. Senator Proxmire opened the hearings on the Senate bill with the warning that "[c]omputer systems are far from infallible, and electronic fund transfers—so totally dependent

on computers—will also be error prone." *The Electronic Funds Transfer Consumer Protection Act, 1977: Hearings on S. 2065 Before the Subcomm. on Consumer Affairs of the Senate Comm. on Banking, Housing and Urban Affairs,* 95th Cong., 1st Sess. 2 (1977); *see also* 124 Cong.Rec. 25731 (1978) (statement of Rep. Annunzio, bill sponsor). As one commentator explains, telephonic communications were included in the definition of electronic fund transfers in order to extend coverage over computerized pay-by-phone systems; informal non-recurring consumer-initiated transfers were excluded, however, because they are not prone to computer error or institutional abuse since they are handled on a personal basis:

> The final exemption from the purview of the EFT Act is an exclusion for nonrecurring transfers of funds that are initiated by an ordinary telephone conversation between a consumer and an officer or employee of the financial institution. In order to extend coverage over computerized "pay-by-phone" systems, the general definition of the term "electronic fund transfer" had to be broad enough to encompass transactions initiated through a telephone. Like automatic debiting of service charges and automatic crediting of interest, however, ordinary nonrecurring transfers informally initiated by a consumer's call to an officer or employee of his neighborhood bank or savings and loan association was not considered to pose a serious threat warranting the coverage and additional costs of the EFT Act. Such requests are handled on a personal basis, so the possibility of computer error or institutional abuse, believed to exist with respect to some other EFT systems, was deemed to be absent.

Brandel & Oliff, *The Electronic Fund Transfer Act: A Primer,* 40 Ohio St.L.J. 531, 545 (1979). Telephonic transfers made

between a natural person and an employee of the financial institution share this element of human contact, regardless of whether the transfer is made by the account holder or someone else.

Finally, we note that the EFTA was passed because "[e]xisting law and regulations in the consumer protection area are not applicable to some aspects of the new financial service concepts." H.R.Rep. No. 1315, *supra,* at 33. *See also* 15 U.S.C. § 1693a. The plaintiff suggests in her reply brief that she would have no adequate legal remedy for the wrong she has suffered if she were denied relief under the EFTA. While she conceded at oral argument that she might have an action under state law for conversion or breach of contract (her deposit agreement with the bank), she maintained that a person suffering a loss resulting from the abuse of one of the other electronic fund transfer systems [5] would also have such an action under state law.

The plaintiff ignores the essential difference between electronic fund transfer systems and personal transfers by phone or by check. When the bank employee allegedly agreed to withdraw funds from the plaintiff's account, he or she presumably could have asked some questions to ascertain whether the caller was one of the account holders. The failure to attempt to make a positive identification of the caller might be considered negligence or a breach of the deposit agreement under state law. When someone makes an unauthorized use of an electronic fund transfer system, however, the financial institution often has no way of knowing that the transfer is unauthorized.[6] For example, in order to make a transfer at an automatic teller machine, a person need only possess the machine card and know the correct personal identification number.

---

**5.** Congress was specifically concerned with four principal types of electronic fund transfer services: (1) automated teller machines, (2) pay-by-phone systems, (3) direct deposits and automatic payments, and (4) point-of-sale transfers. S.Rep. No. 915, *supra,* at 2, U.S. Code Cong. & Admin.News 1978, p. 9404.

**6.** One of the purposes of the EFTA was to determine who should bear the loss for these unauthorized transfers. S.Rep. No. 915, *supra,* at 3, 5–6, U.S.Code Cong. & Admin.News 1978, pp. 9405, 9407–9408. Limitations on the consumer's liability for unauthorized transfers are contained in 15 U.S.C. § 1693g.

The computer cannot determine whether the person who has inserted the card and typed in the magic number is authorized to use the system. What might be a withdrawal negligently permitted by the financial institution in one situation might not be a negligent action in the other.

Our analysis of both the language of the EFTA and the legislative history of the Act leads us to conclude that Congress intended to exclude from the Act's coverage any transfer of funds initiated by a phone conversation between any natural person and an officer or employee of a financial institution, which was not made pursuant to a prearranged plan and under which periodic and recurring transfers were not contemplated. Accordingly, we hold that the withdrawal of funds from the plaintiff's account is not covered by the Act even though said withdrawal allegedly was not made by either the plaintiff or her sister. The district court's dismissal of the plaintiff's action for lack of subject matter jurisdiction is AFFIRMED.