Inez **SPAIN**

v.

**UNION TRUST.**

**Civ. No. N–86–207 (PCD).**

United States District Court,
D. Connecticut.

Sept. 28, 1987.

Opinion on Motion for Granting
Reconsideration Nov. 2, 1987.

Janet Bond Arterton, Garrison, Kahn, Silbert & Arterton, New Haven, Conn., for plaintiff.

Thomas J. Sansone, Cormody & Torrance, Waterbury, Conn., for defendant.

**RULING ON CROSS–MOTIONS FOR
SUMMARY JUDGMENT**

DORSEY, District Judge.

Plaintiff instituted this action on June 17, 1986. She claims that on June 24, 1985, defendant improperly initiated an electronic fund transfer of $50 from her bank account

without her knowledge or authorization. Second Amended Complaint at ¶ 5. Defendant's action was allegedly predicated on a check which was made payable to Michiko Fischer by Blue Cross & Blue Shield of Connecticut and which was purportedly endorsed by Fischer and plaintiff—an endorsement which plaintiff claims was forged. Defendant debited plaintiff's account based on its finding that the Fischer check was forged and subsequently cashed by plaintiff. As a result of defendant's action, plaintiff claims that a number of her checks were dishonored, for which defendant imposed charges on her account. *Id.* at ¶ 6. Plaintiff alleges that she alerted the defendant on June 26, 1985, and again in August 1985, that the transfer was improper. *Id.* at ¶¶ 7–8. She makes the following claims:

*Count One*

(1) Defendant failed to observe the error resolution procedure of 15 U.S.C. § 1693f and Reg. E, 12 C.F.R. § 205.11 by:

(a) failing to conduct a timely and good faith investigation;

(b) failing to have a reasonable basis for its action;

(c) failing to mail or deliver a timely written explanation of its findings;

(d) failing to notify plaintiff that she could request reproduction of the documents upon which defendant's decision was based.

Second Amendment Complaint at ¶¶ 9–10

(2) Defendant attempted to deter plaintiff from exercising her right to review the documents by:

(a) failing to notify her that such was her right;

(b) insisting that plaintiff be accompanied by a policeman or attorney if she wanted to review the photographs of the alleged transaction.

*Count Two*

Defendant violated 15 U.S.C. § 1693c and Reg. E, 295 C.F.R. § 205.7(a)(9) by disclosing to her employer information about her account and particularly the circumstances surrounding the check. *Id.* at ¶¶ 14–15

*Count Three*

Defendant's actions constituted a conversion and violated the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a, *et seq.* *Id.* at ¶ 19.

*Count Four*

Defendant violated the Connecticut Financial Privacy Act, Conn.Gen.Stat. § 36–9, *et seq.*, the common law of Connecticut and breached their contract. *Id.* at ¶ 21.

The parties have filed cross-motions for summary judgment as to defendant's liability to plaintiff on Count One and part of Count Two under the Electronic Fund Transfer Act ("Act"), 15 U.S.C. § 1693, *et seq.*, and the regulations promulgated thereunder, 12 C.F.R. Part 205. The sole issue is whether the transaction alleged in the complaint is covered by the Act.[1]

The parties agree on the following facts:[2]

Plaintiff maintained a bank account with defendant, to which she had access through an electronic terminal. On May 17, 1985, a paycheck, made out to and endorsed by plaintiff, was presented to teller number 5255 (Sharon Young), together with a deposit slip. The deposit slip is a three-part form consisting of a top copy (white), a middle copy (pink), and a bottom copy (yellow). One hundred and thirty-five dollars of the check was deposited into plaintiff's account; $110.51 was disbursed in cash. This transaction occurred at 11:50 a.m. On that same day, at 11:51 a.m., a check payable to Michiko Fischer in the amount of $50 was also presented to Young and $50 was disbursed in cash. The back of that check contained the handwritten names of "Michiko Fischer" and "Inez Spain." That check was not deposited into plaintiff's account.

On June 24, 1985, defendant's agent, Shirley Veronneau, debited plaintiff's account for $50, representing the amount of the Fischer check, without plaintiff's

---

1. This is a case of first impression.

2. These facts are taken from the Joint Statement of Material Facts filed by both parties.

knowledge. Prior to taking such action, Veronneau ascertained from the teller tape that plaintiff's paycheck had been deposited immediately prior to the cashing of the Fischer check. Veronneau also compared the signature on the Fischer check with plaintiff's signature card which was on file with the bank. Based on her conclusion that plaintiff had endorsed the Fischer check, Veronneau prepared a debit slip in the amount of $50. The debit slip, like the deposit slip, is a three-part form consisting of a top copy (white), middle copy (pink), and bottom copy (yellow). The yellow copy is sent to the person whose account is being charged when the debit is made; the white copy is sent to that person with his/her monthly statement; the pink copy is retained by the branch office. The debit slip is not put through a teller machine, but is sent instead to defendant's Operations Center. At the Operations Center, the debit slip is coded and sent to a sorting area. The debit slip is then recorded on a sorting machine which is connected electronically with the bank records. (No money goes into or out of an account except by computer). At the end of the evening, if the credits and debits recorded on the electronic sorting machine are in balance, the credit and debits are released and the accounts are thereby affected.

Defendant admits that it did not inform plaintiff of the circumstances under which it would disclose information concerning a customer's account to a third party. It further admits that it did not disclose that it would give information about plaintiff's account to her employer. Finally, the bank also admits that, after plaintiff claimed that the transfer of $50 out of her account was in error, it did not send to plaintiff a written explanation of its finding.[3]

### Discussion

The Act was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693. Hence, liability under the Act is predicated on a finding that there has been an "electronic fund transfer." The term "electronic fund transfer" is defined, in relevant part, as:

> any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693a(6)

Construing this section in light of the facts presented requires a review of the language, legislative history and purpose of the statute. No reported case has been found to have construed § 1693a(6) as to be helpful to the resolution of these motions.

### A. *Statutory Language*

■ Section 1693a(6) covers transactions which are initiated through an "electronic terminal, telephonic instrument, or computer or magnetic tape." If liability is to be found here, it must be premised on a finding that the transaction was initiated through an electronic terminal or computer

---

**3.** Although the parties agreed on a joint statement of facts for resolution of these motions, defendant has raised a number of additional claimed facts in its motion to which plaintiff objects, only one of which is potentially critical to the issue involved herein. Defendant claims that, when Veronneau completed the debit slip from plaintiff's account, she also made out a check payable to Blue Cross & Blue Shield to reimburse that company for the Fischer check. Plaintiff does not dispute that this is the usual process, but argues instead that in this instance the check was never delivered or issued to the payee. Defendant responds that the reason the Blue Cross/Blue Shield check was voided was because they were the improper party for payment. Instead, a new check was created and paid to Connecticut National Bank. The court need not determine exactly what occurred in this case. For purposes of this motion, it is sufficient to note that plaintiff cannot and does not raise any legitimate objection to defendant's representation that in situations such as that described here the consumer's account is debited and an off-setting check drawn on defendant is executed.

tape. There is no basis for a finding that a telephonic instrument was involved.

"[T]he term 'electronic terminal' is defined as an electronic device ... through which a consumer may initiate an electronic fund transfer. Such term includes, but is not limited to, point of sale terminals, automated teller machines, and cash dispensing machines." 15 U.S.C. § 1693a(7). The transaction in question here, albeit that such was partially performed on a computer, does not neatly fit within the definition of an electronic terminal. Section 1693a(6) covers transfers, via electronic terminals, which "order, instruct, or authorize a financial institution to debit or credit an account." If the computer claimed herein to constitute a electronic terminal so qualified, then the underlined language would be rendered moot inasmuch as the financial institution—the only entity which has access to such computer—would be authorizing itself to debit or credit a consumer's account. Such an illogical reading of the statute is unwarranted. This same argument is equally applicable to the argument that the transaction involved herein was conducted on a computer or magnetic tape.

Furthermore, although it might be argued that because Congress left open the definitions of "electronic fund transfer" and "electronic terminal" it intended the Act to cover transactions such as the one which occurred here, such is not consistent with the purpose of the statute. Congress left open these definitions because it recognized "that computer technology was still in a rapid, evolutionary stage of development." *Kashanchi v. Texas Commerce Medical Bank,* 703 F.2d 936, 939 (5th Cir. 1983), citing S.Rep. No. 915, 95th Cong.2d Sess. 9, *reprinted at* 1978 U.S.Code Cong. & Admin.News 9273, 9411. However, congressional concern was focused "on future and as yet undeveloped systems, not on systems that Congress had simply failed to discuss." *Kashanchi,* 703 F.2d at 940. Here, the transaction involved has long been a means by which banks have conducted business when situations like this one arise. This transaction simply was not a by-product of the new computer automated era that Congress feared would leave

consumers without any clue as to their rights.

Plaintiff nevertheless argues that the statute should be read broadly to include transactions like this one and that defendant should not be excused from liability merely because they have created a "paper trail." She argues that the Federal Reserve Board's interpretation of the Act supports this position. *See* Plaintiff's Memorandum at 11, citing Federal Reserve Official Staff Commentary Q11–1, republished at 12 C.F.R. Part 205, Supp. II, at 138:

> Q: *Transfers—initiated by institution.* If a transfer is initiated by a financial institution or its employees without the consumer's authorization, does it constitute an error?
>
> A: Yes. It constitutes an incorrect electronic fund transfer unless the transfer was authorized, for example, by a court order.

Plaintiff's argument is ill-founded, however, since liability under the Act, as the Federal Reserve's answer indicates, is premised on a finding of an electronic fund transfer. As noted, that is not the case here. Indeed, another Federal Reserve Staff Commentary supports this conclusion.

> Q: *Teller-operated terminals.* Does electronic terminal include a computer terminal operated by a teller or other employee of a financial institution, for purposes of the terminal receipt requirement?
>
> A: Electronic terminal does not generally include computer equipment operated by a financial institution's employees or used internally by the financial institution to process transfers.

Federal Reserve Official Staff Commentary Q2–25, republished at 12 C.F.R. Part 205, Supp. II, at 119.

Section 1693a(6) also excepts checks, drafts or similar paper instruments. Defendant debited plaintiff's account and memorialized such action with a debit slip, a copy of which was provided plaintiff. Immediately subsequent to the debiting of plaintiff's account, defendant thereafter is-

sued a check, on its own account, for the precise amount by which plaintiff's account was debited. The check was then eventually sent to the proper payee for reimbursement for cashing the purportedly forged Fischer check. The two events must be viewed in conjunction. The issuance of the check, although not directly drawn from plaintiff's account, was predicated upon the debiting of her account. Both transactions were handled by a bank employee, not a electronic terminal. Both transactions, although perhaps processed on a computer or typewriter, were paper instruments, although only the check was negotiable. Conn.Gen.Stat. § 42a–3–104. The transaction involved herein is more closely akin to an internal processing of a check or similar paper instrument than it is to an electronic terminal transfer. It is not covered by the statutory language.

B. *Legislative History*

The legislative history of the Act sheds additional light on the intended scope of the statute:

> There are four principal types of EFT services available to consumers today: automated teller machines, also known as 24–hour tellers, which enables consumers to perform a variety of banking transactions at almost any hour of the day or night; pay-by-phone systems, which permit a consumer to telephone his bank and order payments to third persons or a transfer between accounts; direct deposits and automatic payments, through which wages or social security benefits are automatically deposited in a consumer's bank account or regularly recurring payments, like utility bills or insurance premiums, are automatically deducted; and point-of-sale transfers, which enable a consumer, through use of a computer terminal at a retail establishment, to transfer money instantaneously from his bank account to the merchant's.

S.Rep. No. 915, 95th Cong., 2d Sess. at 2, *reprinted at* 1978 U.S.Code Cong. & Admin.News at 9404.

The transaction involved herein is nothing like the ones discussed in the Senate Report. The legislation was designed to create rights for the consumer and help bring certainty to an era of banking which was fast becoming faceless, an era wherein banking could be conducted almost exclusively through machines. *Cf. id.* at 3, *reprinted at* 1978 U.S.Code Cong. & Admin. News at 9405; *Kashanchi,* 703 F.2d at 940, citing H.R.Rep. No. 1315, 95th Cong., 2d Sess. at 2. Quite simply, the absence of personal contact was seen as a disadvantage of the automated system. " '[T]hese impersonal transactions are much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods.' " *Kashanchi,* 703 F.2d at 940, quoting *id.* Plaintiff's interpretation of the statute ignores the essential difference between an electronic fund transfer and the transfer which occurred in this case. The former requires no personal contact, no personal decision making; the latter required a personal determination as to the propriety of the action to be taken and a personal effort to execute such action. Stated another way, the difference is between an electronic terminal which takes the place of a face-to-face personal banking transaction and the electronic terminal of a computer which merely assisted the financial institution in its internal processing of the transaction. *Cf.* Federal Reserve Official Staff Commentary Q2–25. The presence of human contact takes this transaction out of the scope of the Act.

*Conclusion*

Both the statutory language and the legislative history compel a reading of the Act which excludes coverage for the transaction discussed herein. Although plaintiff might dispute the way her account was handled, her relief does not lie under the statute. Accordingly, plaintiff's motion is denied and defendant's motion is granted. Inasmuch as the court is left without a jurisdictional basis to hear this suit, 28 U.S.C. § 1331, the case is dismissed. Plaintiff may pursue her state claims in state court.

SO ORDERED.

## RULING ON MOTION TO SET ASIDE JUDGMENT AND FOR RECONSIDERATION

The motion for reconsideration is granted and upon reconsideration the previous ruling on cross-motions for summary judgment, September 28, 1987, is modified accordingly.

■ In Count Two, plaintiff alleged that defendant violated 15 U.S.C. § 1693c and 12 C.F.R. § 205.7(a)(9) by not disclosing to her under what circumstances defendant would provide information about her account to her employer. In the ruling of September 28, 1987, the court found that no electronic fund transfer had occurred and thus plaintiff had no basis for holding defendant liable under the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* Plaintiff's state law claims were dismissed as dismissal of the federal claims left the court without a jurisdictional basis to hear the state claims. Plaintiff has now appropriately pointed out that there need not be a finding of an electronic fund transfer to find a financial institution liable under 15 U.S.C. § 1693c.

Liability under § 1693c is predicated solely on the fact an account that has electronic fund transfer capability has been opened by the consumer. At the time that account is opened, or before the first electronic fund transfer is made, the financial institution is required to disclose "[t]he circumstances under which the financial institution in the ordinary course of business will disclose information to third parties concerning the consumer's account." 12 C.F.R. § 205.7(a)(9). In commenting on this requirement, the Federal Reserve Board has noted that, even when a customer holds two accounts with the bank, one which offers electronic fund transfer services and one which does not, the financial institution is obligated in relation to the former account to "describe the circumstances under which *any* information relating to that account (not just information concerning electronic fund transfers) will be made available to third parties." Staff Commentary, 12 C.F.R. Part 205, Supp. II, § 205.7–16 (emphasis in original). This commentary is consistent with the statute's and the regulation's requirement that the disclosure obligation is extended to all matters involving the consumers *account*, not just those matters involving electronic fund transfers. *See* § 1693c(a)(9) ("disclose information concerning the consumer's account"). Indeed, Congress explicitly deferred to the Federal Rreserve Board to define the circumstances under which terms and conditions affecting this customer's account would be disclosed. *See* § 1693c(a) ("in accordance with the regulations of the Board").

Plaintiff has alleged that "she maintained a bank account with defendant, to which she had access through an electronic terminal." Complaint at ¶ 4. Although defendant has answered that it has insufficient information to verify that allegation, Answer at ¶ 3, it has not rejected it in opposition to plaintiff's motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, no factual question is presented. Defendant has also admitted "that it did not disclose the circumstances under which ... in the ordinary course of business [it would] disclose information to third parties concerning [plaintiff's] account." Answer at ¶ 15; Joint Statement of Material Facts at ¶ 13.

Accordingly, upon reconsideration, the previous ruling is hereby modified such that defendant's motion as to Count II is denied and plaintiff's cross-motion as to Count II is granted on the issue of liability. The dismissal of plaintiff's state claims is hereby vacated. Absent notification by counsel as to their desire to schedule a settlement conference believing that such is reasonably likely to lead to a resolution of the issues herein, the parties shall complete the Trial Preparation Order in accordance with the following schedule:

Section A: November 18, 1987

Section B: December 2, 1987

Section D: December 16, 1987

SO ORDERED.