Melanie CURDE and husband, Tommy Curde, Plaintiffs–Appellants,

v.

TRI–CITY BANK & TRUST COMPANY, Defendant–Appellee,

v.

DIEBOLD, INC., Third–Party Defendant.

Supreme Court of Tennessee, at Knoxville.

March 9, 1992.

Michael A. Faulk, Church Hill, for plaintiffs-appellants.

Jack M. Vaughn, Fuller & Vaughn, Kingsport, for defendant-appellee.

S. Morris Hadden, Hunter, Smith & Davis, Kingsport, for third-party defendant.

DROWOTA, Justice.

This case presents an issue of first impression, namely, whether the Electronic Fund Transfers Act, 15 U.S.C. § 1693 et seq. (1988) (the "Act"), applies to the attempted deposit of a check via a bank automated teller machine. The trial court granted partial summary judgment to Plaintiffs–Appellants, Melanie and Tommy Curde, holding that the Act applied. The Court of Appeals granted Defendant–Appellee, Tri–City Bank & Trust Company, an interlocutory appeal pursuant to Rule 9, T.R.A.P., and reversed, holding that the Act did not apply. We granted Plaintiffs' application for permission to appeal, pursuant to Rule 11, T.R.A.P., and affirm on different grounds.

On May 24, 1987, Plaintiff Melanie Curde attempted to deposit a $200.00 check at Defendant–Bank's automatic teller machine (the "ATM"). The parties stipulated for purposes of the present summary judgment determination that Plaintiff cancelled the attempted deposit. Plaintiff received a receipt from the ATM indicating, in code, that the attempted deposit had been cancelled. While there is some dispute as to Plaintiff's particular actions in attempting to make the deposit, the check was discovered some seven months later behind the front cover of the ATM. The sole issue before us is whether the Act applies in these circumstances.

The purpose of the Electronic Fund Transfers Act is to "provide a basic frame-

work establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b)(1988). Its primary objective "is the provision of individual consumer rights." *Id.*

The pivotal question presented here is whether a check deposit via an ATM is an "electronic fund transfer." Under the Act, an "electronic fund transfer"

> means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

*Id.* at § 1693a(6) (1988). This definition specifically includes automatic teller machine transactions. Unmistakedly, there was an ATM transaction here, notwithstanding that the attempted deposit was ultimately cancelled. However, we must decide whether (1) the phrase "other than a transaction originated by check, draft, or similar paper instrument," or (2) the stipulated cancellation, removes this transaction from the scope of the Act.

### I.

◼ Plaintiffs assert that the phrase "other than a transaction originated by check, draft, or similar paper instrument" is intended only to exclude a bank's internal electronic processing of checks. The Bank urges an interpretation based on the "plain-meaning rule" and a resultant finding that all transactions involving checks are outside the purview of the Act.

When the interpretation of federal law depends upon a statute and the intention of Congress, we must first examine the statutory language. *See Blum v. Stenson,* 465

U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). If the statutory language is unclear, we then look to the legislative history. *See id.* Further, we note that the plain-meaning rule is "an axiom of experience [rather than] a rule of law, and does not preclude consideration of persuasive evidence if it exists." *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928) (Holmes, J.), *quoted with approval in Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). Because we find the statutory language unclear as to whether the Act applies to check deposits via an ATM, we proceed to consider the related legislative history, Federal Reserve Board regulations, and caselaw.

The Senate Committee on Banking, Housing, and Urban Affairs, in its report recommending passage of the Act, stated that

> This bill applies to four common EFT services: *automated teller machine transactions, such as cash withdrawals or deposits* or transfers between accounts; pay-by-phone services, in which a consumer orders his financial institution to make payments to another; point-of-sale systems, where funds are transferred from a consumer's account to a merchant's through use of a computer terminal at the merchant's place of business; and automated clearing house transactions through which a consumer's account is automatically debited for a recurring payment, like insurance premiums, or is regularly credited with wages, pension benefits, and the like. Each of these EFT transactions is *initiated and carried out primarily by electronic means.*

S.Rep. No. 95–915, 95th Cong., 2d Sess. 3, *reprinted in* 1978 U.S.Code Cong. & Admin.News 9403, 9405 (emphasis added). The report goes on to state that the bill does not cover "check truncation systems in which paper checks or drafts are routed or processed electronically." *Id.* at 9406.

Two points are instructive. First, the bill was intended to cover *cash* deposits; sec-

ond, the types of transactions covered were those "initiated and carried out primarily by electronic means." Note that a cash deposit is no more "carried out primarily by electronic means" than a check deposit. Both deposits are placed in envelopes and inserted into the ATM. Both envelopes must be physically removed from the ATM and have their contents checked by bank personnel. It would be a spurious distinction at best which justified a finding that while the cash deposit is "initiated and carried out primarily by electronic means," the check deposit is not.

The Act provides that "[t]he [Federal Reserve] Board shall prescribe regulations to carry out the purposes of this subchapter." 15 U.S.C. § 1693b(a) (1988). Further, the Board's regulations "may provide for such adjustments and exceptions for any class of electronic fund transfers, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter." *Id.* at § 1693b(c) (1988).

The regulations do not alter the Act's definition of "electronic fund transfer" except to exclude "payments made by check ... at an electronic terminal." 12 C.F.R. § 205.2(g) (1991). However, the Official Staff Interpretations specifically state that a check deposit to an ATM is covered by the Act:

> 2–11 Q: *Fund Transfer—Deposits of Currency, Checks.* Does the term electronic fund transfer include deposits of currency and checks at an automated teller machine (ATM)?
>
> A: A deposit made at an ATM or other electronic terminal is an electronic fund transfer for purposes of the regulation if there is a specific agreement between the financial institution and the consumer for the provision of E.F.T. services to or from the particular account to which the deposit is made.

Federal Reserve Official Staff Interpretation Q2–11, *reprinted in* 12 C.F.R. Pt. 205, Supp. II, at 130 (1991).

Although the Court of Appeals dismissed the above official staff interpretation as an erroneous opinion of a staff attorney contrary to the plain language of the statute, we are satisfied that the Federal Reserve Board could, in the exercise of its judgment under section 1693b(c), determine that check deposits should be covered in order to effectuate the purposes of the Act.

Additionally, during consideration of the Act in Congress, an amendment was added specifying that an institution would not be liable if it relied in good faith on official interpretations of the Federal Reserve regulations. *See* 124 Cong.Rec. 25743 (1978); 15 U.S.C. § 1693m(d)(1) (1988) [1]. This good faith reliance exception was founded on the belief that "[a]n institution should have a clear reference source to enable it to know what it must do to comply with the Act." 124 Cong.Rec. 25743 (1978) (statement of Rep. Barnard). This safe harbor is a two-way watercourse; if institutions are entitled to rely upon the official interpretations, so should consumers be entitled. A financial institution should not be permitted to wait until a consumer brings suit, and then challenge the consumer's reliance on an Official Staff Interpretation clearly granting consumers protection under the Act.

There has been little prior judicial construction of the Act. *Kashanchi v. Texas Commerce Medical Bank, N.A.,* 703 F.2d 936 (5th Cir.1983), dealt with whether the Act applied in a situation where an unauthorized withdrawal of funds was executed via telephone. Holding the Act inapplicable, the Court stated that "[t]he plaintiff ignore[d] the essential difference between electronic fund transfer systems and *per-*

---

**1.** **(d)** No provision of this section or section 1693n of this title imposing any liability shall apply to—

> **(1)** any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conform-

ity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor;

*sonal* transfers by phone or by check." *Kashanchi,* 703 F.2d at 941 (emphasis added).

There was no personal contact between Ms. Curde and the Bank respecting her attempted deposit of the check. The absence of human contact between the parties was a major factor motivating Congress to pass the Act. *See Kashanchi,* 703 F.2d at 940; H.R.Rep. No. 95–1315, 95th Cong., 2d Sess. 2 (1978) (impersonal transactions are particularly vulnerable to fraud, embezzlement, and unauthorized use).

Another factor motivating passage of the Act was that consumers utilizing electronic transfers do not receive traditional written records of their transactions. *See Kashanchi,* 703 F.2d at 940; S.Rep. No. 95–915, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 9403, 9407. Because of the "faceless" transaction with the ATM, a consumer does not, at the time of the deposit, receive the same receipt she would when dealing with a human teller. That a check deposit to an ATM is an impersonal transaction which does not supply the consumer with a traditional bank receipt weighs toward a finding that Congress intended these transactions to be within the scope of the Act.

In *Bisbey v. D.C. National Bank,* 793 F.2d 315 (D.C.Cir.1986), a consumer informed her bank that she believed an error had occurred with regard to a preauthorized transfer agreement.[2] 793 F.2d at 316. The bank was held liable under the Act for its failure "to comply with provisions in the Act when addressing a lawful inquiry about *possible* mistaken fund transfers." *Id.* at 318 (emphasis in original) (bank failed to fulfill its duty under the Act to provide the consumer with written notice of the results of its investigation into the alleged error).

Ms. Curde asserts that the Act applies to her attempted deposit because, as in *Bis-*

*bey,* she made a "lawful inquiry regarding a possible mistaken fund transfer." The Bank replies that *Bisbey* is distinguishable because, there, (1) funds were actually transferred electronically and (2) there was a preauthorized transfer agreement. We find neither of the factors urged by the Bank must be present for the Act to apply. First, a completed transfer of funds is not a necessary prerequisite for a transaction to be an electronic fund transfer under the Act; if it were, a mistake by a financial institution that prevented actual transfer would remove the attempted transaction from the scope of the Act, thereby defeating the Act's purpose in "establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." *See* 15 U.S.C. § 1693(b) (1988). Second, the Act's coverage is not limited to transactions surrounding preauthorized transfer agreements.

In *Spain v. Union Trust,* 674 F.Supp. 1496 (D.Conn.1987), plaintiff alleged that the Act applied when a bank made an unauthorized charge to her account. A "debit slip" had been prepared by a teller and sent to the bank's operation center for electronic processing. The court emphasized that the transactions were handled by bank employees, not electronic terminals. *Id.* at 1500 ("face-to-face personal banking transaction[s]" are not covered; stating that the presence of human contact removed the transaction from the Act's coverage). The *Spain* court held that the transaction was "more closely akin to an internal processing of a check ... than ... to an electronic terminal transfer," and thus not covered by the Act. *Id.*

In *Wachter v. Denver National Bank,* 751 F.Supp. 906 (D.Colo.1990), a customer brought suit against her bank for allegedly mishandling a wire transfer. The plaintiff gave cash to a bank employee who then initiated the wire transfer. *Wachter,* 751 F.Supp. at 907. The court found that the

---

**2.** The agreement authorized the bank to debit the consumer's checking account on a monthly basis for payment of insurance premiums. The

consumer, albeit incorrectly, thought that the bank had made a double payment in October 1981.

presence of personal contact with a bank employee between the consumer and the electronic transfer device removed the transaction from the scope of the Act. *See id.* at 908. There is no analogous personal contact here that would remove Ms. Curde's attempted deposit from coverage under the Act.

We find that under the rationale of both *Spain* and *Wachter,* there was no face-to-face personal contact which would remove Ms. Curde's attempted check deposit from the Act's coverage. Further, a completed transfer of funds is not necessary for coverage under the Act. *See* 15 U.S.C. § 1693h(a) (1988) (imposing liability on financial institutions for failure to make certain electronic fund transfers). Therefore, we find that an attempted check deposit to a ATM is an "electronic fund transfer" covered by the Act. Here, Ms. Curde had a dispute with Tri–City Bank & Trust over whether a deposit had been made to her account. Imposing a duty on a bank to investigate and report disputed transactions at faceless automated teller machines is precisely the kind of consumer protection the Act is meant to afford.

## II.

However, because for the purpose of this partial summary judgment motion, Ms. Curde admitted (via stipulation) that she cancelled the attempted deposit (transfer of funds), we hold that the Act does not apply. Once the consumer, by her own action, cancels a transaction, she has prevented the automatic teller transaction from becoming an electronic fund transfer under the Act. In order to come within the Act, the automatic teller transaction must "order, instruct, or authorize a financial

institution to debit or credit an account." *See* 15 U.S.C. § 1693a(6) (1988); *Wachter,* 751 F.Supp. at 908. Once the transaction was cancelled by Ms. Curde, the financial institution was no longer instructed to credit her account; it therefore was not an electronic fund transfer under the Act.[3]

For the foregoing reasons, on the facts presented to us, we find that the trial court erred in granting partial summary judgment for Plaintiff. The case is remanded to the trial court for proceedings consistent with this opinion. The costs will be divided equally by the parties to this appeal.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

---

**3.** Additionally, note that a financial institution will not be liable under the Act for its failure to make an electronic fund transfer unless "properly instructed to do so by the consumer." 15 U.S.C. 1693h(a)(1) (1988). While the case at bar involves the threshold question of applicability, we find the Act's liability provisions instructive. These provisions, coupled with the requirement discussed in the text of an "order ... to debit or

credit an account," evidence a clear intent that the Act provide relief only where an institution fails to comply with a consumer's proper instruction to make a transfer. When Ms. Curde cancelled her transaction, she no longer instructed the Defendant to make an electronic fund transfer; having no instruction, Defendant cannot be charged with any failure.